

RECEIVED

DEC 1 2 2014

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>EX REL. KATHLEEN MCDONNELL<br><br>- and -<br><br>KATHLEEN MCDONNELL,<br>Individually,<br>c/o James G. Nowogrocki, Esquire<br>Weiss Attorneys at Law, P.C.<br>1015 Locust Street, Suite 400<br>St. Louis, Missouri 63101<br><br>        Plaintiffs<br><br>v.<br><br>ICP MEDICAL, LLC<br>13720 Rider Trail North<br>St. Louis, Missouri 63045<br><br>        Defendant. | 4 : 1 4CV 002042 JAR<br><br>FILED *IN CAMERA* AND<br>UNDER SEAL<br><br><br><br><br>CASE NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

This lawsuit is based on a scheme by Defendant ICP Medical LLC ("ICP") to defraud the

United States by failing to disclose deep discounts ICP offered to commercial customers when

ICP sold medical equipment and supplies to the Department of Veterans Affairs pursuant to a

Federal Supply Schedule Price List.  ICP's failure to disclose the discounts it offered to its most

favored customers resulted in overcharges to the federal government totaling millions of dollars.

Plaintiff Kathleen McDonnell, by undersigned counsel, and acting on behalf of and in the name

of the United States of America, brings this civil action under the <u>qui tam</u> provisions of the False

Claims Act, and alleges as follows:

1

Case: 4:14-cv-02042-JAR   Doc. #: 1   Filed: 12/12/14   Page: 2 of 24 PageID #: 2

## JURISDICTION AND VENUE

1.     This is a civil action by Plaintiff Kathleen McDonnell, acting on behalf of and in the name of the United States, against ICP under the False Claims Act, 31 U.S.C. §3729-33. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1345 and 31 U.S.C. §3732(a).

2.     ICP transacts business with the United States in the Eastern District of Missouri through its corporate accounts and sales department, which are headquartered in ICP's office in St. Louis, Missouri.  Venue in this District is proper pursuant to 28 U.S.C. §1391 (c) and 31 U.S.C. §3732(a).

3.     To the extent there has been a public disclosure unknown to Plaintiff-Relator, the Plaintiff-Relator is the original source as defined by 31 U.S.C. §3730(4).  She had direct and independent knowledge of this information upon which the allegations set forth herein are based and have voluntarily provided the information upon which this Complaint is based to the Government before filing the instant *qui tam* action.

## PARTIES

4.     Plaintiff Kathleen McDonnell was formerly employed with ICP as its contract administrator for supply contracts involving the United States Department of Veteran Affairs. ("VA") McDonnell worked continuously for ICP and in the course of her employment has obtained independent and personal knowledge of the schemes and conduct described in this Complaint.

2

5.    ICP is a Delaware corporation and is duly registered to do business in the State of

Missouri from its corporate its headquarters at 13720 Rider Trail North, St. Louis, Missouri

63045.

## FILING UNDER SEAL

6.    In accordance with 31 U.S.C. §3730(b)(2), this Complaint is filed in camera and

will remain under seal and will not be served on the defendant until the Court so orders.  A copy

of this Complaint and a written disclosure of material evidence and information in the possession

of Plaintiff will be served upon the United States pursuant to 31 U.S.C. §3730(b)(2) and

FED.R.CIV.P 4(i).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.    Under delegated authority by The Government Services Administration ("GSA"),

the United States Department of Veteran Affairs ("VA") manages multiple award contracts for

medical equipment, supply, pharmaceutical, and service schedule programs.  With over $10

billion in sales, the VA FSS Service supports the healthcare requirements of the VA and other

federal government agencies by providing customers with access to over 1 million state-of-the-

art commercial products and services.

8.    Through the VA, the United States negotiates contracts which contain an

authorized Federal Supply Schedule ("FSS") with these various vendors and suppliers of medical

equipment and supplies, including ICP Medical.

9.    The Federal Supply Schedule program, pursuant to 41 U.S.C. §259(b)(3)(A),

provides Federal agencies with a simplified process of acquiring commercial supplies and

services in varying quantities while obtaining volume discounts.  The firms provide supplies and

3

services at stated prices for given periods of time, for delivery within a stated geographic area such as the 48 contiguous states, the District of Columbia, Alaska, Hawaii, and overseas.

10.     Like GSA Schedule contracts, the VA Schedules are indefinite delivery/indefinite quantity type contracts awarded to pre-approved vendors using full and open competition. Additionally, the FSS program negotiates firm-fixed pricing based on a commercial "most favored customer" pricing concept, including an option for economic price adjustments.

11.     At all times relevant to this Complaint, the Federal Acquisition Regulations required VA contract officers negotiating FSS contracts "to obtain the offeror's best price (the best price given to the most favored customer)." 48 C.F.R. §538.270(a).  Under the regulations, contract officers must "compare the terms and conditions of the FSS solicitation with the terms and conditions of agreements with the offeror's commercial customers." 48 C.F.R. §538.270(c). The forms for submitting FSC solicitations to the VA also required an offeror to disclose relevant terms and conditions offered to its most favored customers, and VA contract officers relied on the accuracy of those disclosures in negotiating FSS contracts and in determining whether to accept or reject FSC solicitations. GSA's policy statement for MAS contracts, issued October 25, 1982, and published at 47 C.F.R. §50242, states that "the Government's goal when negotiating MAS contract pricing arrangement is to obtain a discount from a firm's established catalog or commercial price list which is equal to or greater than the discount given to that firm's most favored customer.  The most favored customer (MFC) discount is equal to the best discount given by a firm to any entity with which that firm conducts business . . . ." GSA reaffirmed its requirement that the government receive most favored customer pricing in amendments to its acquisition regulations governing MAS contracts published in the Federal Register on August 21, 1997. 62 F.R. §44518, August 21, 1997. 48 C.F.R. §552.238-75(b) requires an MAS

4

contractor "to report to the Contracting Officer all price reductions to the customer (or category of customers) that was the basis of the award" during the entire period that MAS contract is in place.

12.     Additionally, the Department of Defense manages a similar system of schedule contracting for military items under its Distribution and Pricing Agreement program ("DAPA"); however, the Department of Defense systems are not technically a part of the Federal Supply Schedule program. ICP Medical also began in participate in DAPA around May 2010 and Plaintiff had direct and independent knowledge of ICP's acts and omissions related to DAPA while she served a contractor administrator.

**ICP CORPORATE HISTORY AS SUCCESSOR**

13.     ICP Medical is the successor in interest to the Salus Corporation, which first entered into a Contract #: V797P-4290B for a Contract Period from May 1, 2010 to April 30, 2015.  The contract was for FSC Group 65, Part II, Section A; Medical Equipment and Supplies and involved FSC Classes:  6510, 6516, 6530 and 6532.  The original contract included the ICP Medical Supply Schedule for a variety of products with a corresponding FSS Price.

14.     At all relevant times, this FSS contract with the United States government/VA was subject to the regulations FAR52.212-4, 552.38-71, FAR52.212-5, 552.258-74, 552.212-71 and 552.212-72.

15.     The Salus Corporation entered into a price list as follows:  Salus Corp dba/ICP Medical Contract #v797P-4290b

| SIN | Product # | Product Name/Description | Unit of Measure | Net FSS Price |
|---|---|---|---|---|
| A-33(a) | ICP-5050Y | Polycoated comfort gown | CA | $85.00 |
| A-33(a) | ICP-8150 | SMS comfort gown | CA | $89.01 |
| A-33(a) | ICP-7050C | Extended wear gown | CA | $97.50 |
| A-33(a) | ICP-9001GL | Stretcher Sheet | CA | $113.75 |
| A-33(a) | ICP-9000TO | Scrub Top-V Neck | CA | $143.01 |
| A-33(a) | ICP-9050TO | Scrub Top-V Neck XL | CA | $156.00 |
| A-33(a) | ICP-9000BT | Scrub Bottoms | CA | $78.00 |
| A-33(a) | ICP-9050BT | Scrub Bottoms XL | CA | $81.25 |
| A-33(a) | ICP-9050JK | Scrub Jacket | CA | $149.50 |
| A-33(a) | ICP-1000LF | Body Bag | CA | $243.75 |
| A-33(a) | ICP-6100 | Rapid Refresh Privacy Curtain | CA | $574.99 |
| A-33(a) | ICP-6000 | Rapid Refresh Privacy Curtain Instal Kit | CA | $114.99 |
| A-33(a) | ICP-2000 | PPE Organizer, Single Column | CA | $194.99 |
| A-33(a) | ICP-2050 | PPE Organizer, Double Column | CA | $234.99 |

16.     Salus Corporation d/b/a ICP Medical submitted a supplemental price list as part of the first contract modification on or about January 15, 2013 to Iliana Jorge, Contracting Officer for the Department of Veteran Affairs.

17.     On or about March 22, 2013 Defendant ICP submitted a second modification to FSS contract and added the following six contract administrators.  These include Brian E. Sanders, President of ICP Medical, David Bivens, Vice President Chief Financial Officer of Team Tech, Inc. the parent company, Katy Mahoney, Marketing Manager. Liz Macleod, Supervisor Customer Service & Sales Operations, Plaintiff Kathleen McDonnell, Project Manager and Dane Rinne, Corporate Account Manager.

18.     At all relevant times, Ed Ruble, the Director of Operations for Defendant ICP was also a signatory authority for offers and contracts with the United States government.  In addition, Steve Henrikson, President and Chief Executive Officer of Team Tech Inc., the parent company of ICP Medical LLC was also a signatory authority for the VA contract.

6

19. At all times Steve Coulter, as a Director of Finance, also had signatory authority on behalf of Defendant ICP Medical LLC with regard to the FSS contract, as did Brian E. Sanders, President of ICP Medical. Sanders, Coulter and Ruble knowingly orchestrated the fraudulent and defective pricing schemes which caused the United States/VA to make overpayments to ICP Medical, all in violation of federal and state laws.

20. As part of the third modification of the FSS contract in November 2013, Sales Corporation d/b/a ICP Medical LLC identified as transferor, entered into a novation agreement whereby ICP Medical LLC assumed all contractual and legal obligations of the contract entered with the FSS contract, V797P-4290B.

## FALSE INFORMATION AND FRAUDULENT CONDUCT

21. At all times during the Contract Period for the VA Contract, ICP and its management employees regularly sold its products at a lower price and intentionally and knowingly failed to disclose this information to the VA. As a result, the VA and other federal agencies overpaid for ICP medical equipment and supplies.

22. In 2014, a management official of ICP created a spreadsheet which set forth the Lowest Community Price for Products listed in the FSS Contract V797P-4290B. This spreadsheet, for example, listed the lowest community price for Polycoated Comfort Gowns at $63 a case. However, ICP knowingly did not disclose this lowest price to the VA. Instead, this ICP manager stated that ICP would just "play dumb" if ever subjected to an audit by the VA. Thus, ICP knowingly and intentionally made false, material and fraudulent disclosures to the VA of its lowest commercial price as substantially higher than ICP in reality was providing to commercial customers across the United States.

23.     The prices on the spreadsheet created by ICP Medical showing the price were in stark contrast to those officially provided by ICP to the VA as part of its medical federal supply schedule. For example, ICP knew it had its lowest community price of $63 per case for the poly coated comfort gown and yet knowingly and falsely represented to the VA that the lowest price for this gown was $85 per case.

24.     All of the prices on the spreadsheet prepared by ICP showing its lowest community price were never provided to the government and each of those prices were lower than those set forth by ICP to the VA as part of the medical federal supply schedule.

25.     As discussed in detail herein, Defendant's false and fraudulent statements conduct took several interconnected forms. First, the Defendant knowingly provided false, incomplete and inaccurate information to the government regarding its commercial pricing practices throughout the contracting period for FSS Contract V797P-4290B. Second, during the performance of the contract, the Defendant breached its contractual obligations to report to the VA that it had offered higher discounts to commercial customers than had been disclosed to the VA at all relevant times and to provide these higher discounts to government purchasers. Third, Defendant manipulated its commercial sales in order to avoid a contractual obligation to reduce the prices offered to government agencies consistent with reduced prices given to commercial customers. Finally, in order to obtain modifications to the contract, the Defendant reiterated and made false statements to the VA than it had made during the contract negotiations and breached its affirmative duty to inform the government of higher discounts than they were offering to commercial customers. As a result of the Defendants' false and fraudulent statements and conduct, the Defendant knowingly submitted and caused to be submitted false or fraudulent

8

claims for payment to the United States for the products that ICP sold to the United States. In turn, the United States was harmed by making overpayment for these medical materials.

26.     Defendant ICP Medical entered into hundreds of special pricing agreements with commercial customers across the U.S. for a wide variety of medical supplies and equipment, including PPE organizers, and knowingly and intentionally failed to disclose these reduced commercial prices to the VA and United States.

27.     This is further illustrated by conduct such as that on or about June 17, 2011, when Defendant ICP Medical entered into an agreement with UPMC Supply Chain Management for the sale of disposable poly-coated isolation gowns at a price of $67 per case, which included 100 gowns. Defendant knowingly provided false and inaccurate information to the government which it knew was false regarding its commercial pricing practice involving UPMC in that ICP Medical knowingly and intentionally failed to disclose this reduced commercial price to the VA and United States.

28.     The United States government used tiered schedules from the 2010 to 2015 VA contract to calculate the aggregate list prices for contract items without a discount. The spreadsheets then calculated the price that the government should have paid if ICP had disclosed more favorable discounts it gave commercial customers. These spreadsheets calculate the difference between what the government paid using the VA's schedule tier discounts versus what it would have paid if ICP had disclosed all commercial discounts to the VA and United States.

29.     In some instances, a government contracting official may have negotiated a discount below the published GSA/VA schedule for purchases within these listings. However, any such negotiated discounts below the published price were affected by a fraudulent starting point. The government contract officer seeking a discount below the stated price started by

9

relying on ICP's representations that its VA prices were the prices it offered to commercial customers. It is certainly more likely than not that any government contracting official who negotiated prices below the VA discounts on any purchase would have negotiated a proportional discount if ICP had truthfully reported its commercial discounts and the starting point in the negotiations had been a greater discount rate, rather than those provided in materially false and fraudulent statements by ICP to the VA.

30.     The VA government's payments to ICP during the duration of the VA FSS contract were in reality overpayments for purchase of medical supplies and/or equipment because the fraudulent statements and actions of ICP had the purpose and effect of causing the VA to pay these monies at inflated prices.

31.     The applicable price reduction clause also provides that within fifteen (15) days of a lower price being given to ICP's commercial customers, ICP had the contractual and fiduciary duty to provide the information to the government VA contracting officer. At all relevant times, ICP knowingly and intentionally failed to provide truthful and correct information to the government VA contracting officer concerning such price reductions involving its commercial customers.

32.     Plaintiff has knowledge of an Excel file which highlights ICP sales of curtain and curtain install kits for 2011 and 2012. This information shows sales by customer, month and price. However, ICP failed to include sales information which includes sales to the distributor. These sales were mostly based off ICP's FSS contract. Authorized distributors would purchase ICP's products at contract price, then the various VA facilities and agencies would purchase the products from the distributor. The distributors would include Cardinal Health, Owens & Minor, NMS, Claflin & Ekla were the main distributors purchasing ICP's products off the FSS contract.

The Defendant engaged in false and fraudulent conduct in that the VA's purchase of these products from the distributors were at a price higher than that offered to a most favored price or lowest price provided by Defendant ICP to its distributors.

33. Plaintiff also includes an excel file which contains ICP's curtain kits and curtain sales data for the first quarter of 2014. This sales data provides data for direct sales only, the reports do not include distributor sales.

34. Steve Coulter, as Vice President of ICP Medical, knowingly and intentionally prepared an internal document which set forth the lowest commercial prices submitted to the United States government.

Salus Corporation dba ICP Medical
FSS Contract: V797P-4290B

| Product Number | SIN | Product Description | FSS Price | Special Price | Lowest Community Price |
|---|---|---|---|---|---|
| ICP-5050Y | A-33A | Polycoated Comfort Gown | $85.00 | | $63.00 |
| ICP-8150 | A-33A | SMS Comfort Gown | $89.01 | | $46.50 |
| R2-200FB | A-33A | Weight, Open Back, Fold, Bag, Universal | $75.38 | | N/A |
| ICP-7050C | A-33A | Extended Wear Gown | $97.50 | | $84.00 |
| ICP-6000 | A-33A | Rapid Refresh Privacy Cutain Install Kit | $114.99 | $89.00 | $75.00 |
| ICP-6100 | A-33A | Rapid Refresh Privacy Cutain | $574.99 | $330.00 | $190.00 |
| ICP-2000 | A-33A | PPE Organizer, Single Column | $194.99 | | $125.00 |
| ICP-2050 | A-33A | PPE Organizer, Double Column | $234.99 | | $175.00 |
| ICP-9000BTM | A-33A | Scrub Bottoms | $78.00 | | $50.50 |
| ICP-9000TOP | A-33A | Scrub Top-V Neck | $143.01 | | $101.00 |
| ICP-9050BTM | A-33A | Scrub Bottoms XL | $81.25 | | $54.50 |
| !CP-9050TOP | A-33A | Scrub Top-V Neck XL | $156.00 | | $109.00 |
| ICP-9050JKT | A-33A | Scrub Jackets | $149.50 | | $62.50 |
| ICP-9001GUR | A-33A | Stretcher Sheet | $113.75 | | $104.00 |
| ICP-1000LF | A-33A | Body Bag | $243.75 | | $193.50 |

35. The government overpaid because ICP was selling these products at a lowest community price which was not disclosed to the federal government and the following chart sets

11

forth the number of cases sold and dollar amounts to the United States government/VA and its

various agencies.

Salus Corporation dba ICP Medical
FSS Contract: V797P-4290B

| Product Number | SIN | Product Description | 2013 Cases sold to VA's | 2013 $ sold to VA's |
|---|---|---|---|---|
| ICP-5050Y | A-33A | Polycoated Comfort Gown | 9728 | $826,880.00 |
| ICP-8150 | A-33A | SMS Comfort Gown | 28,896 | $2,456,160.00 |
| R2-200FB | A-33A | Weight, Open Back, Fold, Bag, Universal | 4,012 | $300,900.00 |
| ICP-7050C | A-33A | Extended Wear Gown | 2,251 | $191,335.00 |
| ICP-6000 | A-33A | Rapid Refresh Privacy Cutain Install Kit | 627 | $55,803.00 |
| ICP-6100 | A-33A | Rapid Refresh Privacy Cutain | 298 | $98,340.00 |
| ICP-2000 | A-33A | PPE Organizer, Single Column | 186 | $36,268.14 |
| ICP-2050 | A-33A | PPE Organizer, Double Column | 209 | $49,112.91 |
| ICP-9000BTM | A-33A | Scrub Bottoms | | |
| ICP-9000TOP | A-33A | Scrub Top-V Neck | | |
| ICP-9050BTM | A-33A | Scrub Bottoms XL | 7 | $568.75 |
| ICP-9050TOP | A-33A | Scrub Top-V Neck XL | 4 | $624.00 |
| ICP-9050JKT | A-33A | Scrub Jackets | | |
| ICP-9001GUR | A-33A | Stretcher Sheet | 101 | $8,585.00 |
| ICP-1000LF | A-33A | Body Bag | 125 | $30,468.75 |

36. As part of its dealings and contractual obligations between Defendant ICP and the United States, ICP was required to fill out a Commercial Sales Practice format which would have included proposed pricing, additional discounts, concessions offered to the government, commercial sales practices format and information concerning discounting and reselling to the commercial customers.

37. Plaintiff also submits information concerning a deviation in pricing for Rapid Refresh Curtains that was not revealed to the government. This is set forth in a spreadsheet which identifies commercial customers such as SSM DePaul Health Center, Missions Hospital Inc., SSM St. Mary's Janesville, North Texas Health and other entities under the Premier Agreement. So for example, ICP Medical was providing Rapid Refresh Privacy Curtains at a

12

price of $285 a case to these commercial customers while not revealing that lowest price to the VA and federal government. At all times during her employment with ICP, plaintiff constantly raised her concerns that ICP was disregarding its obligations under the Price Reduction Clause; failing to provide truthful information to the United States; and knowingly providing false information to the VA and United States, yet the Defendant ignored her concerns and instead continued with its false and fraudulent conduct alleged herein.

## FALSE AND FRAUDULENT MODIFICATIONS

38.     In addition, Defendant ICP engaged in a number of modifications to the original VA federal supply schedule contract. ICP was obligated under the applicable federal guidelines to provide true, complete and accurate information for all contract modifications.

39.     During McDonnell's employment, Defendant ICP knowingly submitted materially false and fraudulent statements concerning the product additions as set forth on a request for modification form applicable to the VA FSS commodity schedules.

40.     Each time that Defendant ICP proposed or completed an administrative modification of the VA FSS contract for medical supplies and equipment, the Defendant submitted a false and fraudulent updated price list to the VA.    At all relevant times, ICP knowingly did not reveal its most favored price or the lowest community price provided to non-VA customers.

41.     ICP also knowingly engaged in a scheme of fraud involving product deletions. Defendant ICP would delete certain curtains and then ICP would put curtains back in at a lower price in its materially false statements to the VA as part of these modifications.

42.     Instead of informing the VA/United States of a price decrease, ICP would make a fraudulent "product deletion." This occurred, for instance, when ICP originally listed its ICP

13

6100 product on the FSS and then later did a deletion of this product in its commercial pricing statement to the VA/United States. As the next modification, ICP knowingly would re-add the same product under a different code number so as to knowingly and intentionally avoid revealing its true and accurate commercial pricing to the VA which constituted a fraudulent statement that cause the VA to make payments of monies to ICP at inflated prices.

43.     As part of its scheme to defraud and submit false claims to the United States and the U.S. Department of Veteran Affairs, ICP also knowingly submitted false information on product addition/request for modification form. In May 2014, ICP and its management knowingly and intentionally provided false information to the government in a number of ways. First, ICP made a false statement that the firm was the manufacturer of the proposed products which was a false statement in that other entities manufactured the products for ICP which then acted as a dealer/distributor. In response to a question regarding Discounting Practices on the May 2014 request for modification form, Defendant ICP answered yes to the question of whether the discounts and concessions it offered the government were equal to or better than the best price (discount and concessions in any combination) offered to any customer requiring the same items regardless of quantity or terms and conditions. This was a false and fraudulent statement in that ICP was in fact offering lower prices discounts and concessions to commercial customers at prices below that disclosed to the government and failed to disclose these lower prices at any time as part of the contracting with the VA.

44.     In ICP consultant, Michael O'Connor, verbally announced to plaintiff and others, that they must maintain that ICP was the manufacturer of medical supplies and equipment when ICP and O'Connor knew this was a false statement. O'Connor would state to plaintiff and others

that the federal government thinks that ICP is the manufacturer, knowing that was false, and instructed the plaintiff and other ICP employees not to tell the VA/United States otherwise.

45.     From the starting point of the original FSS Contract and into the future, ICP, with every modification, knowingly continued to make the same false statements which caused the VA and United States to make overpayments to ICP

46.     In the same May 2014 request for modification form, the question was posed to ICP there were any deviations from its written policies or standard sales practices that ever resulted in better discounts (lower prices or concessions than indicated.)

47.     Defendant ICP falsely and fraudulently answered no to the question when in fact there were multiple deviations involving the medical supplies and equipment being offered for sale to the United States government.

48.     As part of that same May 2014 document, the ICP knowingly included a commercial price list identified as the "ICP medical commercial price list-March 1, 2014" which falsely provided prices that were higher to the United States government while ICP was selling the same products at a lower price to its commercial customers and failed to disclose that price to the government. As part of that same May 2014 modification, Defendant ICP knowingly made a false statement when it verified that its products were not replacements for previously deleted products with the lower price. This was a false and fraudulent statement in that ICP had offered products in May 2014 which were replacements for previously deleted products with a lower cost.

49.     In Modification 8, ICP represented that it would not provide any Foreign Products. This was a false statement in that ICP purchased body bags made in China and then fraudulently placed these materials in different boxes and containers representing that they were

15

manufactured in the United States. These ICP products, made in China, were continuously sold to the VA and United States which made payments for them.

50.     Under the Trade Agreements Act ("TAA"), ICP had a duty to not use products for sales to the VA unless they were made in a trade approved country and China did not receive that certification. Ed Ruble of ICP said the only way that the VA would ever find out about the fraudulent re-labeling of body bags would be if the VA actually came to ICP's offices and examined the true shipping and billing records.

### FALSE AND FRAUDULENT CONDUCT WITH GPOs

51.     At all relevant times, ICP entered into contractual relationships with major Group Purchasing Organizations ("GPO"), such as Premier, HealthTrust and others, where ICP pricing was extremely lower than was the VA/United States was paying for the same products and ICP knowingly and intentionally failed to reveal this lower GPO pricing to the VA/United States as part of its fraudulent scheme outlined herein.

52.     Plaintiff has knowledge of an Excel file which shows Rapid Refresh Curtains and Installation Kits sales data for the Premier GPO account from January 2010 through 2014. The product codes are different than shown on the FSS contract, but the products are identical. On these GPO sales, ICP had hundreds of community/commercial sector customers that received more favorable pricing than the government and at all relevant times ICP knowingly and intentionally did not provide information concerning these lower commercial prices to the United States and/or the VA.

53.     In May and June 2014, ICP knowingly and intentionally changed product codes to separate sales reporting for its commercial/community customers and government customers.

The false product codes showed on FSS were different that those on GPO lists, but they were the same products.

**FALSE AND FRAUDULENT CONDUCT WITH DAPA**

54.     As part of its ongoing scheme to fraudulently defraud the United States, Defendant ICP also knowingly and intentionally created a fake commercial pricing chart which was disclosed to the Department of Defense for the DAPA Agreement which basically mirrors FSS products and pricing.  The commercial price list provided in March 2014 as part of this exhibit failed to identify that ICP was in fact selling its products lower than the stated price list for example, the poly-coated comfort gown.

55.     Where lower Federal Supply Schedule (FSS) prices are available, DAPA holders are required by the terms of the DAPA to provide the FSS price as the DAPA price.  However, ICP Medical knowingly and intentionally submitted a false price list as part of DAPA which stated higher commercial prices than actually true in its business.

56.     ICP Medical also knowingly and intentionally submitted a false document to DAPA which represented that ICP truthfully made product modifications and deletions while at all times ICP knew it had not done so, which resulted in overpayments by the federal government to ICP.

57.     Each sale between ICP and the VA and DAPA constituted  fraudulent and false transactions because of ICP's acts and omissions outlined hereinabove such that the VA and United States has continuously made overpayments for ICP medical supplies and equipment during the FSS Contract.

58.     At all times relevant herein, the Defendant acted with the requisite intent, i.e. knowledge as that term is defined by FCA §3729(b).

17

## COUNT I (False Claims Act)

### (Knowingly Presenting False and Fraudulent Claims for Payment)

59.     Plaintiff re-alleges and incorporates by reference paragraphs 1-58 as though fully set forth herein as paragraph 59.

60.     ICP knowingly, with actual knowledge of the falsity of its claims and statements to the United States, acted in deliberate ignorance of and acted in reckless indifference to, its statutory, regulatory and contractual obligations to disclose to the United States the discounts and other pricing practices it offered to its most favored commercial customers under its VA FSS contract with the United States.

61.     ICP acted knowingly, with actual knowledge, in deliberate ignorance, and in reckless indifference, in failing to disclose to the United States the discounts and other pricing practices that it routinely offered to commercial customers for its medical supplies and equipment products.

62.     Thus, as alleged hereinabove, ICP knowingly submitted invoices to the United States that were inflated because they did not contain discounts to what the Defendant's commercial customers were receiving from ICP.

63.     ICP knowingly, with actual knowledge of the falsity of its claims and statements to the United States, acted in deliberate ignorance, and reckless indifference, and submitted materially false or fraudulent claims for payment, or caused materially false or fraudulent claims for payment to be submitted, to officials of the United States government, in violation of 31 U.S.C. §3729(a)(1) and (c)). Each claim for payment submitted by ICP to federal government agencies for sales of medical supplies and equipment, was a false claim for payment based on

material failures to disclose the discounts and other pricing practices that ICP offered its most favored commercial customers.

64.     ICP knowingly used techniques set forth hereinabove to avoid PRC reporting requirements and ICP thus manipulated its transactions with the United States which were fraudulent, knowing and material.

65.     Because of ICP's conduct set forth above, the United States has suffered actual damages because the government of the United States had made and will make payment upon false and fraudulent claims. The United States overpaid for each ICP medical supplies and equipment by the amount of discounts and reductions from other commercial pricing practices that should have applied to each such purchase and has suffered additional damages because of these false claims.

## COUNT II (False Claims Act)
### (Knowingly Making and Using False Records and Statements)

66.     Plaintiff re-alleges and incorporates by reference paragraphs 1-65 as though fully set forth herein as paragraph 66.

67.     ICP knowingly, with actual knowledge of the falsity of its claims and statements to the United States, with deliberate ignorance, and reckless indifference, made, used and caused to be made and used, material false records and statements, including but not limited to the discount information submitted with ICP's VA FSS contract modifications, which included false representations concerning the source of manufacturing; product deletions and pricing deviations. All this purposeful conduct by ICP was directed at and resulted in, getting false or fraudulent claims paid or approved by the United States government.

68.     Because of ICP's conduct set forth above, the United States has suffered actual damages because the government of the United States had made and will make payment upon

19

false and fraudulent claims. The United States overpaid for each ICP medical supplies and equipment by the amount of discounts and reductions from other commercial pricing practices that should have applied to each such purchase and has suffered additional damages because of these false claims.

## COUNT III (Breach of Contract)

69. Plaintiff re-alleges and incorporates by reference paragraphs 1-68 as though fully set forth herein as paragraph 69.

70. By reason of the actions described above, ICP materially breached the VA FSS contract by billing in violation of the contractual terms.

71. Defendant further materially breached their contract with the government by failing to furnish accurate, complete, and current data regarding commercial prices and discounts during the life of the contract and by failing to comply with the contract's PRC obligations.

72. By reason of these breaches, the United States has suffered damages in the amount to be determined at trial.

## COUNT IV (Constructive Fraud)

73. Plaintiff re-alleges and incorporates by reference paragraphs 1-72 as though fully set forth herein as paragraph 73.

74. ICP falsely represented its commercial pricing and discounting practices in its submissions made to the VA during the performance of the contract. ICP knew that these representations were false at the time that it made them.

75. ICP's false representations were made with the intent to induce the VA in keeping those terms in place during the performance of the contract; and 3) modifying the contract.

76.     By reason of is reliance on ICP's false representations, the United States was damaged in an amount to be determined at trial.

### COUNT V (Fraud by Omission)

77.     Plaintiff re-alleges and incorporates by reference paragraphs 1-76 as though fully set forth herein as paragraph 77.

78.     Under the terms of the VA FSS Contract, ICP had a duty to disclose "accurate, complete and current" information regarding its commercial discounting and pricing practices to the VA during the performance of the contract.

79.     ICP concealed material facts from the VA regarding its discounting and pricing policies during the negotiations for and performance of the VA FSS contract.

80.     At all times during the performance of the contract, ICP knew that it did not disclose its actual sales practices for sales to non-VA customers, that the VA would be unaware of those practices, would rely on the inaccurate and incomplete information that ICP was providing and would not request that government purchasers receive these higher discounts.

81.     By reason of ICP's concealment of certain discounts that it was providing to non-GSA customers and the United States reliance on the false commercial sales practices information that ICP disclosed to the United States, the United States was damaged in an amount to be determined at trial.

### COUNT VI (Payment by Mistake)

82.     Plaintiff re-alleges and incorporates by reference paragraphs 1-81 as though fully set forth herein as paragraph 82.

83.     Defendants caused the United States to make payments for ICP products based upon the United States' mistaken beliefs that ICP had 1) complied with the contract; 2) provided

the government with "accurate, complete and current" pricing and/or sales data; 3) submitted truthful certifications of compliance during performance of the contract; and 4) was complying with its PRC obligations under the contract. In such circumstances, the payments made by the United States to ICP were made by mistaken and not authorized.

84.     The government awarded the contract to ICP, modified the contract and paid inflated payments on claims arising from the contract in reliance on ICP's representations.

85.     ICP's representations were material both to the government's decision to make the payments it made to ICP under the contract.

86.     As a result of those mistaken payments, the United States has sustained damages in an amount to be determined at trial.

## COUNT VII (Unjust Enrichment)

87.     Plaintiff re-alleges and incorporates by reference paragraphs 1-86 as though fully set forth herein as paragraph 87.

88.     By reason of the government's payments under the ICP VA FSS Contract and other contracts with ICP, ICP received money to which it was not entitled and has thereby been unjustly enriched in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kathleen McDonnell, acting on behalf of and in the name of the United States, demands and prays that judgment be entered in favor of the United States against Defendant on each count of the Complaint as follows:

A.     On Count I, pursuant to the False Claims Act, for judgment against Defendant for statutory penalties and damages as provided in the False Claims Act and for such other relief as the Count deems just and proper.

22

B.     On Count II, pursuant to the False Claims Act, for judgment against Defendant for statutory penalties and damages as provided in the False Claims Act and for such other relief as the Count deems just and proper.

C.     That the Plaintiff-Relator be awarded all costs incurred, including reasonable attorneys' fees;

D.     In the event the United States proceeds with this action, the Plaintiff-Relator be awarded any appropriate amount for disclosing evidence or information that the United States did not possess when this action was disclosed to the Government.

E.     On Count III, for judgment against Defendant in an amount to be determined at trial.

F.     On Count IV, for judgment against Defendant in an amount to be determined at trial.

G.     On Count V, for judgment against Defendants in an amount to be determined at trial.

H.     On Count VI, for judgment against Defendants in an amount to be determined at trial.

I.     On Count VII, for judgment against Defendants in an amount to be determined at trial.

J.     For such further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Kathleen McDonnell demands that this case be tried before a jury.

23

Respectfully submitted,

**WEISS ATTORNEYS AT LAW, P.C.**

James Naugh

James G. Nowogrocki, #38559MO
Richard D. Worth, #61025MO
1015 Locust, Suite 400
St. Louis, Missouri  63101
Phone:  314-588-9500
Facsimile:  314-588-9595
jnowogrocki@weisslawstl.com
rworth@weisslawstl.com
*Attorneys for Plaintiff*

E:\CLIENTS\McDonnellK.7-2696.01\Complaint.docx